UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CUE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 13-12647-IT |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION TO COMPEL AND FOR *IN CAMERA* REVIEW**

August 10, 2015

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Cue, Inc. ("Cue"), is the owner of the trademark "cue acoustics."  It also

claims to be the owner of two applications for a family of trademarks that include "cue

acoustics" and "cue" (collectively, the "Cue Marks").  On October 21, 2013, Cue filed this action

against General Motors, LLC ("GM"), alleging that GM is attempting to harm its business

identity and trade on its goodwill by using the terms "CUE" and "CADILLAC CUE" to market and

sell an advanced user interface system in connection with its Cadillac line of automobiles.  By its

complaint, Cue has asserted claims against GM, pursuant to the Lanham Act and Massachusetts

law, for trademark infringement, unfair competition, and unfair and deceptive acts or practices

in violation of Mass. Gen. Laws  ch. 93A ("Chapter 93A").  In addition, Cue has asserted a claim

against GM by which it is seeking cancellation of the defendant's U.S. Trademark Registration

for the mark "CADILLAC CUE."

Among the issues that are relevant to Cue's claims in this action is the defendant's intent in adopting the allegedly infringing marks.  Thus, in connection with its trademark infringement and unfair competition claims, Cue has raised an issue as to whether or not GM acted in bad faith by selecting the name CADILLAC CUE for its user interface system.  Similarly, in connection with its claims for damages under Chapter 93A, Cue has raised a question as to whether GM's conduct was willful.  Cue has attempted to explore these matters by seeking discovery concerning GM's knowledge of Cue's trademark rights prior to naming its user interface system, as well as the circumstances surrounding GM's adoption of the term CUE.  In response to Cue's discovery requests, GM has disclosed that it first learned of the plaintiff in 2011, when its in-house trademark counsel, Timothy Gorbatoff, commissioned a trademark search for "CUE" and performed an investigation into Cue's claim of rights in the registered trademark "cue acoustics."  In has also disclosed certain facts that Attorney Gorbatoff discovered in the course of his investigation.  However, GM has withheld emails reflecting Attorney Gorbatoff's communications with others at the company on the grounds of attorney-client privilege.  As a result, Cue has been limited in its ability to uncover evidence pertaining to GM's intent.

The matter is presently before the court on "Plaintiff Cue, Inc.'s Motion to Compel and for *In Camera* Review" (Docket No. 55), pursuant to which Cue is seeking the production of email communications listed on GM's privilege log.  Specifically, by its motion, Cue has requested an order:

> (a)   compelling GM to produce an April 3, 2011 email from Attorney Gorbatoff to a member of the committee responsible for naming the CADILLAC CUE system;

(b)      directing GM to submit to the court for an *in camera* review three emails dated July 26, 2011, which reflect communications between Attorney Gorbatoff and other GM employees concerning the naming of the CADILLAC CUE system; and

(c)      compelling GM to produce redacted copies of all emails identified on GM's privilege log.

Cue contends that it is entitled to relief because the attorney-client privilege has been waived with respect to the April 3, 2011 email, there is a "reasonable basis" to doubt that Attorney Gorbatoff was providing legal advice when he communicated with other GM employees on July 26, 2011, and "[e]ach of the emails listed on GM's privilege log contains non-privileged information that is not protected from disclosure." (See Pl. Mot. at 11). The defendant opposes the motion both on the merits and on the grounds that it is untimely.

After consideration of the parties' written submissions and their oral arguments, and for the reasons described below, the plaintiff's motion is DENIED WITHOUT PREJUDICE. While this court rejects GM's assertion that the motion should be denied as untimely, it concludes that GM has not waived its claim of privilege over the April 3, 2011 email. This court also concludes that the plaintiff has not presented a sufficient reason to warrant an *in camera* review of other documents listed on GM's privilege log or to question GM's decision to withhold its emails from production. Accordingly, the motion to compel is DENIED. However, the denial shall be WITHOUT PREJUDICE to Cue's ability to renew its waiver argument at a later time in the litigation if GM relies on the advice of its counsel to establish that it did not act willfully or in bad faith in adopting the CADILLAC CUE mark.

## II. BACKGROUND

The following facts are undisputed for purposes of the plaintiff's motion to compel.[1]

Cue is the owner of U.S. Trademark Registration No. 4, 194,833 for the trademark "CUE

ACOUTICS."  (Compl. (Docket No. 1) ¶ 10; Pl. Ex. 1 at 3).  It also claims to have rights in a family

of marks that includes both "cue acoustics" and "cue."  (Compl. ¶¶ 11-12).  Since about

December 2008, Cue has been using one or more of the Cue Marks in connection with the sale,

advertising and promotion of audio products throughout the United States.  (Compl. ¶¶ 8-9,

13).  Cue's claims in this action arise out of GM's use of the mark "CADILLAC CUE" in connection

with a human-machine interface ("HMI") system that is used in its Cadillac line of vehicles.

### GM's Selection of CADILLAC CUE

GM's decision to use the term CADILLAC CUE was made by an ad hoc team of GM

employees who were assigned to work on the launch and naming of GM's newly designed HMI

system.  (Def. Ex. 1 at 3-4).  The team was headed by Pat Nally, who was employed as GM's

Marketing Manager for the Cadillac XTS during the relevant time period.  (Pl. Mot. at 2-3; Def.

Ex. 1 at 3).  It also included, among others, GM's Assistant Brand Strategy Manager, Brad

Merrill, its Manager of HMI Design, Mike Hichme, and its Director of Design, Stuart Norris.  (Id.).

Mr. Merrill was responsible for acting as the liaison between the ad hoc team and Attorney

Gorbatoff, who was GM's in-house trademark counsel.  (Pl. Mot. at 2-3).

---

[1]  The facts are derived from: (1) the Declaration of John R. Posthumus ("Posthumus Decl.") and the exhibits attached thereto ("Pl. Ex. ___") (Docket No. 55-1); (2) the Declaration of Lawrence T. Stanley, Jr. ("Stanley Decl.") and the exhibits attached thereto ("Def. Ex. ___") (Docket No. 56-1); and (3) the facts described in the parties' briefs.  The facts described in the parties' briefs are supported with citations to the record.  However, in order to comply with instructions from the District Judge and avoid filing materials under seal, the parties have not submitted copies of the underlying evidence to the extent it has been designated as "Confidential" or "Attorneys' Eyes Only" pursuant to the Stipulated Protective Order in this case.  Because this court finds that the relevant facts are not disputed, it is not necessary for the parties to submit that evidence to the court.

Prior to choosing an official name for GM's HMI system, Mr. Hichme and Mr. Norris referred to the system as the "Cadillac User Interface."  (Def. Ex. 1 at 3-4).  However, by about August 2010, following a series of meetings, members of the ad hoc team began referring to the system as "CUE," which stood for "Cadillac User Experience."  (Id. at 3).  Subsequent market research into possible names for the HMI system convinced the team that "CUE" had the greatest appeal among consumers and was the best fit for the product.  (Id. at 4).  There is no dispute that GM had no knowledge of the plaintiff's trademark rights at the time it began using the acronym CUE to describe its HMI system.  (See Pl. Ex. 1 at 3).

Pursuant to GM's standard procedure, the ad hoc team sought clearance to use the name CADILLAC CUE from GM's in-house legal department.  (Def. Opp. Mem. (Docket No. 56) at 3).  The legal department then conducted an investigation, which is described in GM's written responses to Cue's Interrogatories as follows:

> Subject to and without waiving any objections, GM responds that, on or around January 11, 2011, GM legal assistant Lisa Benkarski, at the direction of in-house counsel Timothy Gorbatoff, commissioned a trademark search from CT Corsearch for the mark "CUE".  That search revealed numerous third parties that had registered, or were using, variations of "cue"-related marks as stand-alone marks or as part of composite marks.  Plaintiffs' website www.cue.com was among the twenty-nine domain names identified in the search.  The website featured the mark "Cue Acoustics" with a "TM" symbol.
>
> Investigating the purported trademark rights that Cue, Inc. claimed in the "Cue Acoustics" mark, Mr. Gorbatoff learned that Plaintiff had registered the "CUE ACOUSTICS" mark, and that, in attempting to convince the [U.S. Patent and Trademark Office ("USPTO")] to permit its registration of "CUE ACOUSTICS," it argued to the USPTO that "[t]he word 'CUE' and the letter 'Q' have widespread use in association with various radio, electronic, and transmission-oriented goods and services [that] ... coexist on the Principle Register." GM further learned that Cue went on to assert that "[d]ue to the number of marks consisting solely of the CUE term (or related terms) and other marks incorporating the CUE letter [sic] (or related terms) coexisting on

the Principle Register, [each such] mark should be warranted a very narrow scope of protection ….”

(Pl. Ex. 1 at 3-4 (alterations in original)).

On April 3, 2011, Attorney Gorbatoff sent Mr. Merrill an email pertaining to his trademark searches on Cue, which contained legal advice concerning the selection of a name for GM's HMI system.  (Pl. Ex. 6 at Document No. 66).  In this case, GM has withheld that email from production pursuant to the attorney-client privilege, and has listed it as an entry on its privilege log.  (Id.).  Cue contends that GM's claim of privilege over the April 3, 2011 communication has been waived by the defendant's decision to disclose the results of Attorney Gorbatoff's investigation in its responses to Cue's Interrogatories.  As described below, this court finds that no such waiver occurred.

During the time period between November 1, 2010 and May 25, 2011, Attorney Gorbatoff had no further communications regarding Cue or the Cue Marks with Mr. Merrill or anyone else outside of GM's in-house legal department.  (See Pl. Mot. at 3; Pl. Ex. 1 at 4).  Moreover, there is no dispute that the April 3, 2011 email was the only written communication between any member of GM's ad hoc team and anyone else at the company concerning Cue or the Cue Marks.  (Pl. Mot. at 3).  Consequently, neither Mr. Nally, the head of the ad hoc team, nor Don Butler, the Vice President of Marketing for Cadillac during the relevant time period, had any direct communications with Attorney Gorbatoff regarding the plaintiff or its trademark rights.  (See id.).  Instead, according to Mr. Nally, Mr. Merrill told Mr. Nally that GM was "clear to use" the CUE mark.  (Id.).

## GM's Registration of the CADILLAC CUE Mark

On May 25, 2011, GM began taking steps to register the CADILLAC CUE mark with the USPTO by filing an intent to use application with the PTO.  (Stanley Decl. ¶ 6).  The examining attorney conducted a search of the USPTO's database of registered and pending marks, and determined that there were no conflicting marks that would bar registration of CADILLAC CUE under the Trademark Act.  (Id.).  The application was published for opposition on November 8, 2011.  (Id.).  No parties opposed the application, and the USPTO issue a Notice of Allowance on January 3, 2012.  (Id.).  By the end of May 2012, GM began using the CADILLAC CUE mark in connection with its business, and on March 26, 2013, the USPTO issued GM a registration for the mark.  (Id.).  As part of its claims in this action, Cue is seeking an order directing the USPTO to cancel the registration.

## GM's Privilege Logs

On July 2, 2014, GM produced documents responsive to Cue's initial document requests.  (Id. ¶ 7).  Because the production occurred before Cue had served any email requests, it did not include any emails.  (Id.).  On August 4, 2014, GM produced a privilege log in which it listed documents from its production that had been redacted to protect privileged information.  (Id.).

On July 16, 2014, Cue served a second set of document requests and its initial set of email requests upon the defendant.  (Id. ¶ 8).  The parties had identified whose emails should be searched for responsive documents.  (See id.).  Attorney Gorbatoff was not included in that list.  (Id.).  GM produced responsive, non-privileged documents, and on September 26, 2014, it produced a supplemental privilege log.  (Id. ¶ 9).  The privilege log identified three emails and

one email chain as privileged attorney-client communications.  (Pl. Mot. at 3).  Attorney

Gorbatoff was identified as the author of the emails.  (Id. at 3-4).

Subsequently, Cue requested that GM update its privilege log in order to identify each

email from the email chain individually.  (Posthumus Decl. ¶ 15).  It also asked GM to produce

redacted copies of all emails withheld on privilege grounds.  (Id.).  GM declined to produce

redacted emails, but did agree to log each email separately.  (See Pl. Mot. at 4; Def. Ex. 3).  It

also agreed to provide additional information regarding each email on its log.  (See Def. Ex. 3).

However, before serving its revised log, GM asked Cue to confirm that it would not argue that

the defendant had waived any claims of privilege by providing the additional information.

(Stanley Decl. ¶ 11).  The plaintiff agreed, and GM produced a second supplemental privilege

log.  (Id.; Pl. Mot. at 4).

Following the production of GM's second supplemental privilege log, Cue deposed

Attorney Gorbatoff in his individual and Rule 30(b)(6) capacities.  (Stanley Decl. ¶ 12).  During

the course of that deposition, Attorney Gorbatoff testified about an electronic file of emails

that were relevant to this case.  (Id.; Pl. Mot. at 4).  The plaintiff requested production of the

emails and, after negotiations between the parties, GM agreed to produce and/or log

communications from that file.  (Stanley Decl. ¶ 13; Pl. Mot. at 4).  On January 14, 2014, GM

produced additional documents as well as a third supplemental privilege log.  (Stanley Decl.

¶ 14; Pl. Mot. at 4).  As reflected on that privilege log, all of the emails that have been

challenged by Cue in its present motion to compel have been withheld from production

pursuant to the attorney-client privilege.  (See Pl. Ex. 6).

**Cue's Filing of the Present Motion to Compel**

Cue initially filed its motion to compel on February 3, 2015. (Docket No. 37). Therein, Cue requested, among other things, that the court conduct an *in camera* review of 42 emails that GM had withheld on the grounds of attorney-client privilege, and order GM to produce redacted copies of all privileged emails identified in GM's third supplemental privilege log. (See id. at 13). On March 10, 2015, the District Judge held a hearing at which she denied the motion without prejudice so that the parties could refile their briefs without redactions or exhibits that would need to be filed under seal. (See Docket No. 50 at 4-10). The District Judge did not set a specific date by which the parties were required to resubmit their papers. (See id.). Nor did she establish a deadline for the filing of other motions to compel. (See id.). Nevertheless, GM argues that Cue's motion is untimely because the plaintiff waited for more than three months, and until fact discovery had closed, to file its present motion.

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III. ANALYSIS

Cue is challenging GM's decision to withhold emails from production pursuant to the attorney-client privilege. Specifically, by its motion, Cue is seeking (1) production of the April 3, 2011 email from Attorney Gorbatoff to Mr. Merrill in its entirety, (2) an *in camera* review of three July 26, 2011 emails reflecting communications between Attorney Gorbatoff and Mr. Butler, and between Attorney Gorbatoff and Mr. Butler's boss, Joel Ewanick,[2] and (3)

---

[2] According to the plaintiff, Mr. Butler was the GM officer with primary responsibility for approving the name "CADILLAC CUE," and Mr. Ewanick had veto power over Mr. Butler's decision. (Pl. Mot. at 3, 9).

production of redacted copies of the remaining emails listed on GM's privilege log.  (Pl. Mot. at

12).  The plaintiff contends that relief is warranted because GM has waived any claim of

privilege over the April 3, 2011 email, and there is a reasonable basis to doubt that Attorney

Gorbatoff was providing legal advice on July 26, 2011 rather than non-privileged business

advice.  (Id. at 6-9).  It also argues that it is entitled to any non-privileged information that may

be contained in the emails listed on GM's log.  (Id. at 10-11).  For the reasons that follow, GM

has shown that the attorney-client privilege applies and has not been waived.  To the extent the

challenged emails contain any non-privileged information, GM has shown that such information

has already been disclosed and that no further production is necessary.

      **A.**        **<u>Timeliness of Cue's Motion</u>**

      Before turning to the merits of Cue's motion, it is appropriate to address GM's assertion

that the motion should be denied as untimely.  GM contends that the motion should be denied

on this basis because Cue failed to file it prior to the close of discovery.  (Def. Opp. Mem. at 7-

8).  It also contends that the motion conflicts with the procedure contemplated by the District

Judge at the March 10, 2015 hearing before the court.  (Id.).  As described above, during that

hearing, the District Judge denied Cue's original motion to compel without prejudice so that the

parties could refile their briefs without redactions or sealed exhibits.  (See Docket No. 50 at

6-10).  GM argues that Cue's decision to rewrite much of its motion, and to wait more than

three months before filing it with the court, was not only untimely, but also was improper.

(Def. Opp. Mem. at 7-8).

      This court declines to deny the plaintiff's present motion to compel on this basis.  As an

initial matter, the District Judge did not impose a specific deadline for refiling the motion to

compel. Nor was there anything in her order that specifically precluded Cue from reworking the motion or presenting new arguments to the court. Moreover, there is no indication that the parties were required to file any motions to compel prior to the close of fact discovery. Therefore, Cue's conduct in delaying the filing of its motion and in altering the substance of its arguments does not run afoul of a direct court order.

More importantly, there is no indication that Cue's timing will cause any delay in the resolution of this action or create a substantial burden for the parties or the court. For instance, there is nothing to suggest that a ruling in Cue's favor would necessitate the re-opening of fact discovery. Similarly, there is no indication that the timing of Cue's motion will delay summary judgment or a trial on the merits. Therefore, this court finds it appropriate to address Cue's motion on the merits.

GM argues further that Cue's claim of waiver is not only untimely, but also is inconsistent with the plaintiff's prior representations to the court. (Def. Opp. Mem. at 8). Thus, during the March 10, 2015 hearing before the District Judge, Cue was asked whether it was arguing waiver, and Cue's counsel responded as follows:

> Well, your Honor, I'm not sure if it's -- there's two aspects that we're arguing here, I think. One is that, at the very least, we should be allowed to have access to redacted copies of these emails, right? Right now the entire email itself has not been produced to the plaintiff. Certainly, there's information that's contained on these documents that is not privileged. That would include the header. It would include the subject matter. It would include perhaps some of the text of the email communication that would not be privileged. The purpose of that would be to allow the parties to redepose Mr. Merrill and to use these documents to refresh the recollection of Mr. Merrill.

(Docket No. 50 at 16). GM contends that this response should preclude consideration of the waiver issue now. (Def. Opp. Mem. at 8).

GM's argument is unconvincing.  There is no dispute that Cue did not present a waiver argument in its original motion to compel (see Docket No. 37), and did not mention waiver in the above-quoted response.  Nevertheless, Cue did not affirmatively represent to the court that it had no intention of pursuing a claim of waiver in the future.  Therefore, the court will consider Cue's motion, in its entirety, on the merits.

**B.**     **Alleged Waiver of the Attorney-Client Privilege**

Cue argues that GM has waived its claim of attorney-client privilege over the April 3, 2011 email from Attorney Gorbatoff to Mr. Merrill by "selectively disclos[ing] information that, directly or indirectly, describes the contents of that allegedly privileged communication[.]"  (Pl. Mot. at 6-7).  In particular, Cue argues that GM described the results of Attorney Gorbatoff's trademark analysis in its responses to Cue's Interrogatories, and even quoted portions of the privileged communication.  (Id. at 7-8).  Thus, the plaintiff contends that GM has placed protected information at issue in the litigation, and that it is unfair to allow the defendant to shield the remaining portions of the email from discovery.  (Id. at 8).  This court finds that GM's disclosure of facts regarding the results of its counsel's trademark investigation did not result in a waiver of the attorney-client privilege.

**Waiver of the Attorney-Client Privilege – In General**

The attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice."  In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).  The essential elements of the privilege are as follows:

> "(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that

> purpose, (4) made in confidence (5) by the client, (6) are at his instance
> permanently protected (7) from disclosure by himself or by the legal adviser,
> (8) except the protection be waived."

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).  GM, as the party claiming attorney-client privilege, "must carry the devoir of persuasion to show that it applies to a particular communication and has not been waived."  In re Grand Jury Subpoena (Mr. S), 662 F.3d 65, 71 (1st Cir. 2011).  In the instant case, Cue does not dispute that the April 3, 2011 email falls within the scope of the attorney-client privilege.  Rather, it contends that the protection has been waived by GM's conduct in placing the contents of the email at issue in the litigation.  (See Pl. Mot. at 6-8).

"A party is considered as having waived its privilege if '(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.'"  Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 350 (D. Mass. 1998) (quoting Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  As the First Circuit has explained, "[s]uch waivers are almost invariably premised on fairness concerns."  In re Keeper of Records, 348 F.3d at 24.  Thus,

> "[t]he courts have identified a common denominator in waiver by
> implication: in each case, the party asserting the privilege placed protected
> information in issue for personal benefit through some affirmative act, and
> the court found that to allow the privilege to protect against disclosure of
> that information" would have been unfair to the opposing party.

Id. (quoting Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.41[1] (Joseph M. McLaughlin ed. 1997)).

**Application to the Instant Case**

This court finds that GM has not placed protected information at issue by its disclosures to the plaintiff.  While GM described the factual circumstances under which it discovered Cue's registered trademark and the scope of Cue's claim to rights in the CUE ACOUSTICS mark, it did not reveal the substance of its counsel's advice to Mr. Merrill.  In particular, it did not disclose any legal analysis that may have been performed by Attorney Gorbatoff.  Nor did it disclose any statements or recommendations that Attorney Gorbatoff may have made to Mr. Merrill regarding the ad hoc committee's selection of the trademark CADILLAC CUE.  Instead, the record indicates that GM has been careful to protect any confidential information contained in the April 3, 2011 email communication by continuing to withhold it from production and opposing Cue's efforts to compel its disclosure.

GM's decision to provide Cue with the factual results of the trademark search that the legal department commissioned from CT Corsearch, and to disclose facts from Attorney Gorbatoff's review of Cue's trademark application, does not alter this court's conclusion that no waiver has occurred.  "A defendant does not waive its attorney[-]client privilege by relying on evidence that it conducted a trademark search or by describing its investigation of the search results."  J.T. Colby & Co, Inc. v. Apple Inc., No. 11 Civ. 4060(DLC), 2013 WL 1903883, at *24 (S.D.N.Y. May 8, 2013), aff'd, 586 Fed. Appx. 8 (2d Cir. 2014).  The disclosures that GM made in its responses to Cue's Interrogatories reveal nothing more than information that can be found on the public record, such as the number and identity of third parties who have registered or are using variations of the "cue" mark, and the details of Cue's efforts to register the CUE ACOUSTICS mark with the USPTO.  (See Pl. Ex. 1 at 3-4).  The fact that GM's counsel discovered

the information rather than a non-lawyer employee does not cause it to fall within the scope of the attorney-client privilege.  See Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) ("If … the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged"); Am.'s Growth Capital, LLC v. PFIP, LLC, Civil Action No. 12-12088-RGS, 2014 WL 1207128, at *3 (D. Mass. Mar. 24, 2014) (slip op.) ("documents … 'which merely communicate information obtained from independent sources' are not protected by the attorney-client privilege" (quoting Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 511 (D.N.H. 1996)).  Because there was no disclosure of privileged information, there can be no waiver of the attorney-client privilege.

To the extent Cue argues that GM waived the privilege "by providing word-for-word quotations in response to Cue's Interrogatory[,]" its argument is not persuasive.  (See Pl. Mot. at 8).  The record demonstrates that all of the word-for-word quotations that GM used came directly from Cue's own USPTO file.  (Compare Pl. Ex. 1 at 3-4 with Def. Ex. 2 at 3, 6).  Thus, GM did nothing more than describe what Attorney Gorbatoff found by searching the public record. It has not put protected information at issue in order to gain an unfair advantage.

### GM's Alleged Reliance on Advice of Counsel

In its opposition to Cue's motion to compel, GM provided a list of six facts on which it intends to rely to demonstrate its lack of bad faith in selecting the CADILLAC CUE mark.  (Def. Opp. Mem. at 12-13).  One of those facts consists of evidence that "[t]he legal liaison [Mr. Merrill] conveyed to the ad hoc committee that the legal department gave an 'okay' to proceed with using the name CADILLAC CUE[.]"  (Id. at 13).  During oral argument on the motion to compel, Cue seized on this statement to argue that GM has waived its claim of privilege over

the April 3, 2011 email by placing its attorney's advice directly at issue.  While this court agrees

that GM's use of that fact would place its counsel's advice at issue in the case, it finds that GM's

statement is at odds with its representations to the court that it did not intend to rely on advice

of its counsel, and its otherwise consistent efforts to preserve the privilege over email

communications involving such advice.  Therefore, this court will deny the motion without

prejudice to renewal if GM seeks to use the legal department's "okay" in order to show a lack

of bad faith.

 The First Circuit has described reliance on the advice of counsel as "[a] paradigmatic

example" of waiver by implication.  In re Keeper of Records, 348 F.3d at 24.  "When such a

defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus,

communications embodying the subject matter of the advice typically lose protection."  Id.

Finding implied waiver under such circumstances "ensures fairness because it disables litigants

from using the attorney-client privilege as both a sword and a shield.  Were the law otherwise,

the client could selectively disclose fragments helpful to its cause, entomb other (unhelpful)

fragments, and in that way kidnap the truth-seeking process."  Id.

 GM's single statement that it intends to rely on its counsel's approval to proceed with

using the name CADILLAC CUE is entirely inconsistent with its other representations to the

court.  For instance, in its written opposition to Cue's arguments on waiver, GM stated that it

intended to rely on "[t]he trademark search, subsequent investigation, and successful

application for a trademark registration" as evidence that it was acting in good faith when it

adopted CADILLAC CUE.  (Def. Opp. Mem. at 9).  It also indicated that it did not intend to rely on

the advice of its counsel and was not seeking to use the privilege "as both a sword and a

shield." (Id. (internal quotations and citation omitted)).  Moreover, GM stated that there were enough non-privileged and undisputed facts to demonstrate a lack of bad faith without having to forego the privilege and disclose the substance of its counsel's advice.  (See id. at 12).  These statements are in line with GM's oral representations, which it made during the hearing on the motion to compel, that it was not planning to use the substance of its counsel's opinion as a defense in the litigation.

GM's statement is also inconsistent with its repeated efforts to preserve the attorney-client privilege throughout the course of discovery.  For instance, the record shows that GM took steps to maintain the privilege by withholding attorney-client communications and producing privilege logs during each round of document production.  In addition, GM was cautious to ensure that the plaintiff would not argue waiver if it complied with Cue's request for additional information regarding the emails on GM's privilege log.  (See Stanley Decl. ¶ 11). Similarly, during Attorney Gorbatoff's deposition, GM repeatedly sought confirmation that Cue would not argue waiver if the witness were allowed to respond to questions that came close to eliciting potentially privileged information.  (Def. Opp. Mem. at 10 n.3).  Accordingly, GM has made it clear that it does not wish to waive its claims of attorney-client privilege.

In light of the record as a whole, this court accepts GM's representation that it does not intend to rely on the substance of its counsel's advice as a defense in the litigation.  The motion to compel the production of the April 3, 2011 email is denied.  However, nothing herein shall preclude Cue from renewing its waiver argument if GM attempts to raise an advice of counsel defense at any future point in the case.

C.      **Request for an _In Camera_ Review**

In its motion, Cue also requests that this court perform an _in camera_ review of three

emails, which are dated July 26, 2011 and are listed on GM's privilege log, to determine

whether they are privileged or whether they should be produced.  It further requests that in

the event the court does not find waiver with respect to the April 3, 2011 email, the court

perform an _in camera_ review of that email as well.  (Pl. Mot. at 8).  Because this court finds that

there is no reason to question GM's claim of privilege over the challenged communications, the

motion for an _in camera_ review is denied.

The July 26, 2011 emails reflect communications that Attorney Gorbatoff had with GM's

Vice President of Marketing for Cadillac, Don Butler, and with Mr. Butler's boss, Joel Ewanick.

(Pl. Mot. at 8; see also Pl. Ex. 6 at Document Nos. 98-100).  As shown on GM's privilege log, the

emails concern the use of the term "CUE" to describe the defendant's HMI system.  (See Pl. Ex.

6 at Document Nos. 98-100).  The plaintiff argues that there is "a reasonable basis to doubt"

that these emails, as well as the April 3, 2011 email, involve a request for advice from Attorney

Gorbatoff acting in his capacity as GM's in-house counsel instead of in some other, business-

related capacity.  (See Pl. Mot. at 8-9).  Therefore, it suggests that the emails may not be

privileged.  (See id.).

As described above, the attorney-client privilege "protects only those communications

that are confidential and are made for the purpose of seeking or receiving legal advice."  In re

Keeper of the Records, 348 F.3d at 22.  Thus, in order to fall within the scope of the attorney-

client privilege, the communications at issue must relate to the client's effort to obtain "legal

advice ... from a professional legal advisor in his capacity as such[.]"  Cavallaro, 284 F.3d at 245.

The plaintiff posits that this element of the privilege may be missing from the challenged emails because "[a]s GM's in-house counsel, Mr. Gorbatoff is highly likely to have provided not just privileged legal advice, but also non-privileged business advice." (Pl. Mot. at 9). It urges the court to review the documents *in camera* to determine whether they are actually privileged. (Id. at 9-10).

This court declines the plaintiff's invitation. There is no question that, in general, in-house lawyers often serve in various capacities, including as business strategists or financial consultants. See Am.'s Growth Capital, LLC, 2014 WL 1207128, at *3 (explaining that "an in-house lawyer may wear several other hats (e.g., business advisor, financial consultant)" (internal quotations, alteration and citation omitted)). In addition, there is no question that courts commonly review documents *in camera* in cases where "the assertion of privilege is subject to legitimate dispute[.]" In re Grand Jury Subpoena (Mr. S.), 662 F.3d at 70. In this case, however, there is no reason to believe that Attorney Gorbatoff was acting in any capacity other than in his capacity as GM's in-house trademark attorney. The undisputed facts show that Attorney Gorbatoff was not a member of the ad hoc team responsible for the launch of GM's HMI system and the selection of a name for the company's new product. (See Pl. Mot. at 2-3; Def. Ex. 1 at 3). They also show that Attorney Gorbatoff was working in GM's legal department and acting in his capacity as an attorney at the time the ad hoc team requested his assistance. (See Def. Mem. at 3; Pl. Ex. 1 at 3-4). Moreover, the defendant's privilege log describes Attorney Gorbatoff's April 3, 2011 correspondence to Mr. Merrill as an "Email from GM in-house counsel reflecting legal advice re HMI name[,]" and describes the July 26, 2011 emails as containing "legal advice" from and questions posed to "GM in-house counsel[.]" (Pl.

Ex. 6 at Document Nos. 66, 98-100).  In short, there is no evidence showing that Attorney

Gorbatoff held any position other than that of the defendant's in-house trademark counsel or

provided any services other than in his capacity as the defendant's attorney.  Compare Am.'s

Growth Capital, LLC, 2014 WL 1207128, at **1-2 (reviewing communications involving

attorneys where there was no dispute that those attorneys provided business advice to the

client).  Cue's arguments to the contrary are based on nothing more than speculation.

Cue argues that an *in camera* review is appropriate in any event due to "the dearth of

contemporaneous documents[,] ... the GM witnesses' limited recollections" of relevant facts,

and the inherent bias of GM's counsel as advocates for their client.  (Pl. Mot. at 10).  However,

Cue has not cited any authority that would justify a review based solely on a party's need to

uncover additional evidence, and there is no reason to question the accuracy of defense

counsel's privilege review or their commitment to act in good faith.  Because there is no reason

to second guess any of the information set forth in GM's privilege log, Cue's motion to compel

the submission of emails to the court so that the court can review them *in camera* is denied.

**D.    Cue's Request to Compel Production of Redacted Emails**

Finally, Cue has moved for an order requiring the defendant to produce redacted copies

of all emails listed on its privilege log.  (Pl. Mot at 10-11).  In support of this request, Cue

reasons that, at a minimum, the "header of each email (i.e., the To, From, CC, BCC, and Date

fields, and possibly the Subject field as well) contains non-privileged information, and the

emails may contain other non-privileged information in the body thereof."  (Id. at 11).

Therefore, it seeks an opportunity to review those emails with the privileged information

redacted.  (Id.).  The plaintiff's request is denied.

GM does not take issue with Cue's assertion that documents containing non-privileged information should be produced in redacted form.  Nevertheless, it maintains that it has already produced such documents, and has withheld only fully privileged emails.  (See Def. Opp. Mem. at 19).  This court has no reason to doubt GM's representation that it has fulfilled its discovery obligations with respect to the challenged emails.  To the extent the email headers contain non-privileged information such as the author, recipient, date and subject matter, GM has disclosed that information on its privilege log, and there is no justification for ordering the defendant to produce the information again in an alternative format.  To the extent Cue hopes to "confirm the accuracy" of the non-privileged information described in GM's privilege log, it has provided no factual or legal basis to support its request.  There is no reason to doubt the veracity of that information.  Therefore, the plaintiff's motion is denied with respect to this request as well.

### IV. <u>CONCLUSION</u>

For all the reasons detailed herein, "Plaintiff Cue, Inc.'s Motion to Compel and for *In Camera* Review" (Docket No. 55) is DENIED.  However the denial shall be WITHOUT PREJUDICE to Cue's ability to renew its waiver argument in the event GM seeks to rely on the advice of its counsel to establish a lack of bad faith.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge